Joyce BOWMAN et al., Petitioners,

v.

LUMBERTON INDEPENDENT
SCHOOL DISTRICT,
Respondent.

No. C–7376.

Supreme Court of Texas.

Dec. 31, 1990.

**884**

Jefferson K. Brim, III, David R. Richards, Austin, Truman Dean, Jr., Houston, for petitioners.

Robert J. Hambright, Kenneth D. Furlow, Beaumont, for respondent.

## OPINION ON MOTION FOR REHEARING

RAY, Justice.

We grant respondent's motion for rehearing. Our opinion and judgment of December 7, 1988, are withdrawn and the following substituted therefor.

■ This is a summary judgment case involving whether a school district's trustees may adopt a local increment salary schedule lower than the prior year's after the school year has already begun and first month's salaries have already been paid at the prior year's rate. Following a suit to enjoin approval of the district's tax rate by certain teachers, principals and administrators,[1] joined by other teachers, librarians, and assorted district employees as intervenors,[2] the trial court concluded the school board acted within its legal discretion as a matter of law under the written contracts with the school district employees, granted the School District's motion for summary judgment, and denied a motion for partial summary judgment as to liability filed by twenty-six teachers and two librarians.[3] These twenty-eight, whom we shall collectively call the Teachers, appealed. The court of appeals affirmed the judgment, one justice dissenting. 746 S.W.2d 524. We hold that fact issues as to estoppel and ratification of the local increment terms of the contracts were raised by the Teachers precluding summary judgment in favor of the School District, but that the Teachers' motion sought interlocutory partial relief only and their summary judgment motion and evidence cannot support rendition of a final summary judgment. We reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

To support its summary judgment, the School District must have established its

1. Joyce Bowman, Lee Bryant, Sharon Christopher, Nancy Coy, Denise Fondren, Cynthia Le-Blanc, Mary Jane Mumme, Pattie P. Roberts, Nina Stambaugh, Barbara Whatley, Tommy Edgar, Kay Allen, Fred Morgan, Clint Larson, Sue Horne, John Van Paaschen, Betty Iles, Patricia Pickett, Patricia Edwardson, Carolyn C. McLemore, Barbara George.

2. James White, Joan Falke, Susan Williams, Nelwyn Hardy, Mary Soper, Beverly Bailey, Richard Taylor, June Walton, Lolita Petkousek, Gladys Byrom, Betty Carter, Douglas Tomplait, Delane Cassely, Sandra Hicks, Herma Chandler, Mary Morgan, Ronnie A. Sims, Jackie Kohlman, Lynn Bilberry, Pat Williams, Patricia Kelly, Jeraldine Pool, Rachel Sims.

3. Joyce Bowman, Lee Bryant, Sharon Christopher, Nancy Coy, Denise Fondren, Cynthia Le-Blanc, Mary Jane Mumme, Pattie P. Roberts, Nina Stambaugh, Barbara Whatley, James White, Joan Falke, Susan Williams, Nelwyn Hardy, Beverly Bailey, Richard Taylor, June Walton, Lolita Petkousek, Gladys Byrom, Delane Cassely, Herma Chandler, Ronnie A. Sims, Jackie Kohlman, Lynn Bilberry, Pat Williams, Patricia Kelly, Jeraldine Pool, Rachel Sims.

entitlement to judgment as a matter of law as to each classification of employee represented by the Teachers. *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563, 564 (Tex.1983). Since the material portions of the written contracts are substantially the same, we may, for purposes of this opinion, assume that all the Teachers were "continuing contract" teachers under the Texas Education Code.[4] Specifically, under chapter 13, subchapter C of the Code, a school district may adopt a teacher employment plan utilizing probationary and continuing contracts. Under this system, a teacher serves a probationary period of not greater than four years before being offered a continuing contract. Tex.Educ.Code Ann. § 13.102 (Vernon 1987). Once a teacher achieves continuing contract status, the teacher's employment continues without the necessity of annual school board approval. The continuing contract system is a statutory type of "tenure" system. With a continuing contract, employment may only be severed if the teacher resigns or retires, or the district initiates an action for termination or return to probationary status for a reason and through a procedure authorized by statute. Tex.Educ.Code Ann. § 13.107 (Vernon 1972); *see also* Armstrong & Hollan, *Teacher Termination and Non–Renewal in Texas Public Schools*, 16 St. Mary's L.J. 783, 786 (1985).

Lumberton Independent School District had adopted the continuing contract system. The written contract executed by the School District and the Teachers provided:

> As long as Teacher is employed by the District under the continuing contract status, then annually the Teacher shall receive a supplementary contract stating the salary to which the Teacher will be entitled under the rules of the District.

> The District agrees to pay to the Teacher for all services rendered under this contract a salary at the annual rate as fixed by the Schedule of Teachers Salaries as adopted by the Board of Trustees, in no event less than the State of Texas Minimum Foundation Salary, which annual salary will be paid in twelve (12) monthly installments.

Each year the teacher received a supplement to the continuing contract which by its terms had to be signed and returned within thirty days or the teacher would be considered to have refused to accept the contract and continuing contract status. The School District required the Teachers to sign the supplement the spring of the year before the school year for which the teaching contract applied. Thus, around April of 1985, the School District had the Teachers sign a "Supplement To Continuing Contract Agreement" which stated:

> You are notified your salary of the school year <u>1985–86</u> beginning on the <u>26th</u> day of <u>August</u>, 19<u>85</u>, will be The State of Texas Minimum Foundation Salary plus local increment.

Neither the Schedule of Teachers Salaries nor the local increment (as part of the Schedule) had been adopted for the next school year at the time the Teachers signed the contract supplements.

For the 1985–86 school year, the School District had not adopted a salary schedule when the Teachers began work. The events leading to that anomaly gave rise to the present suit. Because this is a summary judgment case in which all doubts and

---

4. The record is unclear whether the each librarian (Jeraldine Pool and Rachel Sims) holds a teaching contract, but it was represented in oral argument that each does. Since the construction and application of the terms of the written contract are at issue, the analysis would also apply to them, although the continuing contract provisions of the Education Code may apply only to *classroom* teachers. *See* Tex.Atty.Gen. Op. No. M–123 (1967) (interpreting the statutory precursor to Subchapter C of Chapter 13 of the Education Code). At any rate, the summary judgment evidence conclusively establishes that the great majority were continuing contract teachers. We need not address whether the librarians as a matter of law cannot be continuing contract teachers.

inconsistencies in the evidence and all inferences from the evidence must be taken favorably for the nonmovant,[5] we shall state the facts using that standard but attempting at the same time to detail the irregular circumstances giving rise to the controversy. We first address a few other significant dates and statutory detriments associated with the dates.

Some of the Teachers were twelve-month employees; for these teachers the employment duties for the 1985–86 school year began July 1, 1985. One of the continuing contract provisions in the Education Code provides that probationary or continuing contract teachers may resign "without penalty" by August 1, but that teachers who resign without consent of the school board outside the time prescribed "shall be ineligible for employment by any other Texas school district" for that contract year, with suspension of the teacher's teaching certificate.[6] Although the school district apparently must institute administrative proceedings to suspend the teacher's certificate,[7]

the Commissioner of Education has noted the "mandatory terms" of the statute, held that the teacher need not be given opportunity to seek consent of the board, and enforced it despite evidence offered by the teacher of equitable considerations.[8]

Because of an increase in state funding, the School District had given substantial raises to most of its teachers for the 1984–85 school year. By the spring of that school year, however, the budgeted state contributions had been curtailed because the Texas Education Agency determined that the School District was making a lesser "tax effort" as defined in House Bill 72 (H.B. 72, 2nd Called Session, 68th Leg., 1984).[9] The district was further informed that its accreditation was in danger[10] because, among other matters, the district's board of trustees failed to follow its own policies and Texas Education Agency mandated policies and procedures, apparently including some related to budget adoption and teacher salaries. The district was further informed that its state funding would

**5.** *University of Texas Health Science Center v. Big Train Carpet,* 739 S.W.2d 792 (Tex.1987); *Wilcox v. St. Mary's University of San Antonio, Inc.,* 531 S.W.2d 589, 592–93 (Tex.1975); *Hudnall v. Tyler Bank & Trust Co.,* 458 S.W.2d 183, 185 (Tex.1970).

**6.** Tex.Educ.Code Ann. § 13.116 (Vernon 1972) ("**Resignations**"):
(a) Any teacher holding a continuing contract with any school district, or holding a probationary contract with an unexpired term continuing through the ensuing school year, may relinquish the position and leave the employment of the district at the end of any school year without penalty by written resignation addressed to and filed with the board of trustees prior to August 1, preceding the end of the school year that the resignation is to be effective. A written resignation mailed by prepaid certified or registered mail to the superintendent of schools of the district at the post office address of the district shall be considered filed at time of mailing.
(b) Any teacher holding a continuing contract or such unfulfilled probationary contract may resign, with the consent of the board of trustees of the employing school district, at any other time mutually agreeable.
(c) A teacher holding a probationary contract or a continuing contract obligating the employing district to employ such person for the ensuing school year, who fails to resign within the time and in the manner allowed under Subsec-

tions (a) and (b) of this section, and who fails to perform such contract, shall be ineligible for employment by any other Texas school district during the ensuing school year covered by such contract, and his teaching certificate shall be suspended for that school year only.

**7.** Tex.Educ. Agency, 19 Tex.Admin.Code § 61.145 (West 1988) (as effective Jan. 1, 1976), *amended and superseded by* 19 Tex Admin.Code § 61.145 (West Supp.1990–91) (effective June 12, 1989).

**8.** Tex. Comm'r of Educ., *Cypress–Fairbanks Independent School District v. Beverly Sue Moore,* Docket No. 007–TEC–981 (February 26, 1982) (final order suspending teaching certificate for the 1981–82 scholastic year and declaring teacher ineligible to accept employment at any other school district during that scholastic year).

**9.** In 1989 the legislature amended the formula for the minimum contribution from local tax funds, and as amended the statute is now codified in Tex.Educ.Code Ann. § 16.252 (Vernon Supp.1990). References to what is known as "House Bill 72" include Acts 1984, 68th Leg., 2d C.S., ch. 28, art. II, § 13, art. VI, part I, § 3.

**10.** The formal notification listed deficiencies and stated that the agency declined to recommend renewal of accreditation at that time.

likewise be curtailed for the 1985–86 school year. Members of the board of trustees were made aware of such notifications at least by June of 1985. The reduction in state funding left the district with less than its anticipated surplus at the end of the 1984–85 school year. The trustees were further on notice that state funding would be substantially reduced for the following school year.

The Education Code provision in effect at that time required the president of the school board to have prepared a budget not later than August 20 for the upcoming school year, with the budget "itemized in detail according to classification and purpose of expenditure" prepared according to applicable rules and regulations.[11] The summary judgment record does not include the applicable rules and regulations, and the "detail" required for the teacher salary portion of the budget cannot be determined. The evidence indicates that over seventy-five percent of the budget was teacher salaries.

The board did not consider or act on any budget for 1985–86 until its August 26, 1985 board meeting, when the budget was already past due. At the direction of the board president, the superintendent had prepared a proposed salary schedule and budget that substantially would have left the prior year's local increments and salary schedule intact. A budget committee had prepared one or more alternative budget and salary proposals, also at the direction of the school board president. To attempt to meet the deadlines imposed by statute and administrative rules, the board voted to "adopt" the 1984–85 budget as the 1985–86 budget.

At the same time, the board expressly declined to approve a 1985–86 salary schedule, and directed further refinements of the proposed salary schedules discussed at that meeting. The board also failed to set the tax rate. There was an assumption on the part of the superintendent and administrative officers of the district that some form of the superintendent's proposed budget would be adopted. The district consequently continued to pay its teachers at the same salary schedule as in the prior year's budget.

The board had two further meetings on the tax rate and salary schedule. Rather than increase taxes significantly to pay for any version of the prior year's salary schedule, on September 16, 1985, the board adopted a very modest tax increase and a salary schedule developed by one trustee who served on the budget committee. The salary schedule adopted reduced proposed expenditures by significantly cutting the salaries (by decreasing the local increment) for 68 teachers. It also increased salaries of certain other teachers and left some employees substantially unaffected. It was suggested at the meeting that the trustees might not legally be able to reduce salaries after payments based on the prior year's schedule had been made. The trustees were unpersuaded by the suggestion and directed that the district's business manager not only to decrease the salaries of the affected teachers, but also to withhold equal additional amounts from each of their remaining paychecks for that school year to recoup the "overpayment" that had already been made. The employment duties for most of the Teachers began August 26, 1985, but due to the twelve-month

---

**11.** Tex.Educ.Code Ann. § 23.42 (Vernon 1987), *amended by* Acts 1989, 71st Leg., ch. 278, § 1, effective June 14, 1989, now codified at Tex. Educ.Code Ann. § 23.42 (Vernon Supp.1990), then provided:

(a) Not later than August 20 of each year, *the president shall prepare, or cause to be prepared, a budget covering all estimated receipts and proposed expenditures of the district for the next succeeding fiscal year.*

(b) The budget must be itemized in detail according to classification and purpose of expenditure, and must be prepared according to the rules and regulations established by the State Board of Education.

See also Tex.Educ. Agency, 19 Tex.Admin.Code § 109.1 (West 1988) (as effective October 9, *1981*); § 109.61 (West Supp.*1990–91*) (adopting by reference Financial Accounting Manual, Bulletin 679, as maintained by the Central Education Agency).

(level payment) provisions of the continuing contract, they had received two monthly payments at the 1984–85 teacher salary schedule rates for that current school year before the trustees took their action to reduce the local increment portion of the salary schedule.

■ The School District apparently persuaded the trial court that the written contracts only guaranteed the State of Texas Minimum Foundation Salary, that the local increment was fixed at a later date by district policy and procedure, and that the unambiguous terms of the contracts referred only to the Schedule of Teachers Salaries expressly adopted for the specific school year in question. Even accepting that construction of the contracts, however, the Teachers have raised fact issues as to estoppel and ratification as to the "local increment" and salary schedule that applied to them. Ratification and estoppel may apply against a subdivision of government to construe a term of the contract, where with knowledge of material facts the public body takes or allows action inconsistent with other constructions of the contractual term. *Boydstun v. Rockwall County*, 86 Tex. 234, 239–40, 24 S.W. 272, 274 (1893).

■ The School District argued before the trial court that estoppel and waiver could not apply against it because it is a subdivision of government, and any action taken on salaries was not taken by the board as a whole. It is true that the general rule is that "when a unit of government is exercising its governmental powers, it is not subject to estoppel," subject to an exception that municipalities and similar local units of government "may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835–36 (Tex.1970). We need not decide whether the present case presents exceptional circumstances for application for the exception, however, because the rat-

ification and estoppel issues raised by the Teachers fall into other well recognized exceptions. First, the acts of the agent of the board would not bind the board only if the acts were unauthorized. The superintendent of a school district acts as the agent of the board of trustees. *Pena v. Rio Grande City Consolidated Independent School Dist.*, 616 S.W.2d 658, 659–60 (Tex.Civ.App.—Eastland 1981, no writ). When the superintendent and district finance manager as his subordinate issue paychecks and deal with the financial amounts payable under teacher contracts, they do so as agents of the trustees within the scope of their apparent authority. *Hinojosa v. State*, 648 S.W.2d 380, 385–86 (Tex.App.—Austin 1983, pet. ref'd). Estoppel may apply against a school district as to the school superintendent's power to execute an employment contract with a teacher. *Cummins v. Board of Trustees of Eanes Independent School Dist.*, 468 S.W.2d 913, 916–17 (Tex.Civ.App.—Austin 1971, no writ).

■ Further, there was summary judgment evidence that the actions of paying the Teachers at last year's local increment rate was taken with the knowledge and implicit approval of the board, and that the board indicated to the superintendent its intention to adopt a salary schedule with local increments to justify that action. A subordinate officer in such a case need not have the express approval of the entire board to bind the board through estoppel. Estoppel may apply against a subdivision of government where the governing body is a board or commission, if the evidence clearly indicates that the subordinate officer's act was done with the knowledge of the governing body and was so closely related to the expressed will of the governing body as to constitute his act that of the board or commission itself. *City of Houston v. Hruska*, 155 Tex. 139, 144, 283 S.W.2d 739, 742 (1955); *Hallman v. City of Pampa*, 147 S.W.2d 543, 546–47 (Tex.Civ. App.—Amarillo 1941, writ ref'd). The board had the power to set the local incre-

ment by proper board action. "[W]hile estoppel cannot be used to create a new power or enlarge one already in existence, it may be employed to defend against mere irregularities in the doing of a thing in controversy where the power was present to do so." *El Paso County v. City of El Paso*, 357 S.W.2d 783, 789 (Tex.Civ.App.— El Paso 1962, no writ).

 The School District and several *amici* argue that the teacher contracts would be void for exceeding the funds anticipated to be available for the school year in question. The argument is that adoption of a tax rate sufficient to fund the prior year's salary rates would have subjected the district to a tax rate roll-back election, and that if the voters failed to approve the higher rate, then the district would be left with contractual obligations beyond its ability to pay by tax revenues. Even if we charitably construe the School District's summary judgment motion as including this ground, we must reject the argument. There was summary judgment evidence that the School District's surplus from the prior year, though less than the amount recommended by administrative guidelines, plus a tax rate increase less than the percentage increase necessary to trigger a roll-back election, could have been sufficient to meet the contractual obligations as asserted by the Teachers. We adhere to our rule disallowing post-hoc speculation to defeat current contracts, that

> the one essential to the creation of a valid contract otherwise within the powers of the trustees of a school district is the availability of eligible funds for the year in question to pay the money obligations assumed by the district. Where such is the case, the subsequent exhaustion of such funds for other purposes does not retroactively destroy the original validity, or impair the continuing binding force, of the contract.

*National Surety Corp. v. Friendswood Independent School Dist.*, 433 S.W.2d 690, 693–94 (Tex.1968).

 We turn now to Teachers' contentions that they are entitled to judgment as a matter of law. We note at the outset that the relief the Teachers sought in the trial court was a partial summary judgment that by itself would be inherently interlocutory in nature—a partial summary judgment as to liability on the contracts[12] but not as to damages. For an appellate court to reverse summary judgment for one set of parties and render judgment for the others, the filing of cross-motions for summary judgment would ordinarily require all parties to seek final judgment relief by their motions. As we stated in *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 364–65 (Tex.1966):

> The safer rule is one restricting the Tobin–Garcia doctrine to its factual situation ..., that is, to cases in which motions for summary judgment have been filed by all of the real parties at interest and the appeal is prosecuted from a judgment granting one or more of them.

When the relief sought is declaratory judgment, an appellate court may properly render judgment as to liability only, but a separate proceeding as to damages to enforce the declaration is then necessary. *See Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988). Our situation is complicated by the fact that some Teachers (as Intervenors) apparently expressly asked for declaratory judgment relief, while other Teachers did not. We would ordinarily decline to reach the interlocutory relief sought by cross-motions under these circumstances.

Even if we were to reach the Teachers' motions for summary judgment as to liability only, we would be constrained to hold that the summary judgment evidence is not so clear and unequivocal that estoppel or ratification, or both, were established as a

---

12. The motion for partial summary judgment of the Teachers does not mention attorneys fees anywhere in its text. The memoranda briefs and argument to the trial court in support of the motion do not address theories on which the School District might be liable for attorneys' fees.

matter of law.[13] For both the procedural and evidentiary reasons, therefore, we decline to render or direct the rendition of any partial summary judgment in favor of the Teachers.

We reverse the judgments of the trial court and court of appeals, and remand the cause to the trial court.

13. In response to the motion for rehearing, the Teachers admit that the factual statement in our prior opinion that the trustees expressly adopted the prior year's salary schedule at the August 26, 1985 board meeting, was incorrect. Rather, the Teachers assert that it is "implied" that the trustees adopted the salary schedule from adoption of the prior year's budget and the attendant facts and circumstances. While the trustees' testimony and board records may be self-serving, they at least raise fact issues that the prior salary schedule was not adopted either by estoppel or ratification.