OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



December 8, 1999

The Honorable Pete P. Gallego
Chair, Committee on General Investigating
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0154

Re:  Authority of the mayor and city manager of a home-rule city to bind the city to a lease agreement, and related questions   (RQ-0092-JC)

Dear Representative Gallego:

You ask whether a city mayor or city manager operating outside the scope of his or her prescribed authority may bind the city to a lease agreement. We conclude that as a general rule a city mayor or city manager operating outside the scope of his or her prescribed authority may not bind the city with respect to governmental functions. Under some circumstances, however, the unauthorized acts of city officials may bind or estop the city, even in the exercise of a governmental function. Whether there is a basis for estoppel against the city in any particular case requires the investigation and resolution of fact questions, which cannot be done in an attorney general opinion.

You inform us that the City of Eagle Pass is building an international bridge between Texas and Mexico under a "Presidential Permit" issued by the United States Department of State. *See* Letter from Honorable Pete P. Gallego, Chair, Committee on General Investigations, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (July 23, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. Section 367.003 of the Transportation Code authorizes a municipality located within fifteen miles of a section of the Rio Grande forming the border between Texas and Mexico to acquire, construct, improve, enlarge, equip, operate or maintain a toll bridge over the section of the Rio Grande. *See* Act of May 10, 1999, 76th Leg., R.S., ch. 227, § 25, secs. 367.001, .003, 1999 Tex. Sess. Law Serv. 721, 1043-44 (nonsubstantive codification of former TEX. REV. CIV. STAT. ANN. article 1015g-5, §§ 1, 2(a)) (to be codified at TEX. TRANSP. CODE ANN. §§ 367.001, .003). The permit provides that the city "shall provide to the United States Customs Service and to other Federal Inspection Agencies, as appropriate, at no cost to the Federal government, temporary inspectional facilities." Presidential Permit, State Dep't No. 96-01, art. 10, 61 Fed. Reg. 20874 (1996). *See* Act of May 10, 1999, 76th Leg., R.S., ch. 227, § 25, secs. 367.012-.013, 1999 Tex. Sess. Law Serv. 721, 1045 (nonsubstantive codification of former TEX. REV. CIV. STAT. ANN. art. 1015g-5, § 7, authorizing municipality to construct facilities to lease to United States in performing federal governmental function relating to a toll bridge) (to be codified at TEX. TRANSP. CODE ANN. § 367.012-.013). The General Services Administration ("GSA"), acting for the federal government, maintains that the City of Eagle Pass has agreed to provide permanent inspection facilities at no cost or at one dollar per year to the federal government. *See* Request Letter, *supra,*

at 2. The GSA bases its position on its discussions with the city's then-mayor and then-city manager during the planning stages of the project. The city disagrees that it has made such a commitment, stating that the mayor and city manager lacked authority to make this agreement, and that only the city council may bind the city with respect to leasing permanent facilities to the federal government. *See id.*

You have provided us with a copy of the federal permit authorizing construction of the international bridge as well as correspondence relevant to the construction of the bridge. We do not know whether all of these documents are part of the contract, and in any case, we cannot construe a contract in the opinion process. *See* Tex. Att'y Gen. Op. No. JM-697 (1987) at 6. We can address the following legal questions that you ask:

1. Can a city mayor or city manager operating outside the scope of prescribed authority bind the city to a lease agreement?

2. If a mayor or city employee acting without the requisite authority made an agreement to provide free facilities to a government agency at an international bridge built by the city, is such an agreement valid and enforceable even if the agreement was neither authorized, entered into nor ratified by the City's governing body?

Request Letter, *supra*, at 2. Because your questions raise the same legal issues, we will address them together.

The city argues that authority to enter into agreements is vested in the city council and that no individual city council member or city employee may obligate the city unless the city council authorizes that person to do so or ratifies the action after it is taken. *See id.* This view is consistent with the general rule on contractual authority of city officers. When the governmental power of a municipality is vested in a city council or other governing body, a contract must ordinarily be authorized or ratified by the governing body for it to bind the municipality, and an officer or employee of a city, absent express authority, cannot bind the city. *See Brazos River Auth. v. City of Graham*, 354 S.W.2d 99, 110 (Tex. 1961) (provision in deed executed by mayor was invalid because beyond the scope of city council resolution authorizing him to execute deed); *City of Bryan v. Page & Sims*, 51 Tex. 532 (1879) (mayor's contract with attorney did not bind city); *First Nat'l Bank of Marlin v. Dupuy*, 133 S.W.2d 238, 240 (Tex. Civ. App.–Waco 1939, writ dism'd judgm't cor.) (signatures of city mayor and school board chairman on tax assessor-collector's assignment to bank of commissions due him for assessing taxes did not bind city or school district). Apparent authority to act for the city is insufficient; a city officer cannot bind the city except on actual authority, absent any question of estoppel. *See Wilke v. City of Ballinger*, 31 S.W.2d 1102 (Tex. Civ. App.–Austin 1930, no writ); *see also Cleontes v. City of Laredo*, 777 S.W.2d 187, 189 (Tex. App.–San Antonio 1989, writ denied).

Bridge construction and maintenance are governmental rather than proprietary functions of a municipality. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(4) (Vernon Supp. 1999); *see* TEX. CONST. art. XI, § 13 (authorizing legislature to define the proprietary and governmental functions of a municipality). Accordingly, we will consider estoppel only in relation to a city's exercise of its governmental authority. *See generally City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887, 889 (Tex. Civ. App.–Beaumont 1972, writ ref'd n.r.e.) (estoppel against a city acting in its proprietary capacity as distinguished from its governmental capacity).

A city in the exercise of its governmental powers cannot as a rule be estopped by its officials' unauthorized or negligent acts. *See Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 888 (Tex. 1990); *City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex. 1970); *City of San Marcos v. R.W. McDonald Dev. Corp.*, 700 S.W.2d 674, 676 (Tex. App.–Austin 1985, no writ). In exceptional cases, however, a municipality, even in the exercise of a governmental function, may be estopped in two circumstances. First, a city may be estopped where necessary to prevent manifest injustice, and where there is no interference with the exercise of its governmental functions. *See Prasifka*, 450 S.W.2d at 836; *City of Dallas v. Rosenthal*, 239 S.W.2d 636, 645 (Tex. Civ. App.–Dallas 1951, writ ref'd n.r.e.) (zoning powers). For example, where a city has received or accepted benefits under a contract, it may be estopped from denying the existence of the contract even when acting in its public capacity. *See City of San Angelo v. Deutsch*, 91 S.W.2d 308, 309 (Tex. 1936); *City of Nederland v. Callihan*, 299 S.W.2d 380, 386-87 (Tex. Civ. App.–Beaumont 1947, writ ref'd n.r.e.).

Second, the governing body of a unit of local government may be estopped by the action of a subordinate officer or employee, even absent express authority, "if the evidence clearly indicates that the subordinate officer's act was done with the knowledge of the governing body and was so closely related to the expressed will of the governing body as to constitute his act that of the board or commission itself." *Bowman*, 801 S.W.2d 883; *City of Dallas v. Villages of Forest Hills*, 931 S.W.2d 601, 604 (Tex. App.–Dallas 1996, no writ); *Cleontes*, 777 S.W.2d 187, 189; *Hallman v. City of Pampa*, 147 S.W.2d 543, 546-47 (Tex. Civ. App.–Amarillo 1941, writ ref'd). For example, the evidence in *Villages of Forest Hills* clearly showed conduct of city representatives that "so closely related to the expressed will of the governing body as to constitute the act of the governing body itself." *Villages of Forest Hills*, 931 S.W.2d at 604. The City of Dallas Housing and Neighborhood Services Department ("the HNSD") approved a loan application under the city's Rental Rehabilitation Program ("RRP"), a federally sponsored program providing funds to rehabilitate low income housing. *See id.* at 603 & n.1. The assistant director of the HNSD wrote to the borrower that his application had been approved, and her letter created a binding contract between the borrower and the city, even though it was not signed by the city manager or approved by the city attorney as required by the Dallas city charter. *See id.* at 603-04. The evidence showed that the city council had approved the written procedures used by the HNSD to fund RRP loans. *See id.* Because HNSD followed the precise procedure selected by the council for approving RRP loans, the court concluded that "the conduct of the city representatives in approving and notifying [the borrower] of the approval so closely followed the expressed will of the governing body as to constitute the act of the governing body itself." *Id.* at 605. The actions of the city representatives in approving the RRP loan

were binding on the city, and the city was estopped from denying the validity of the letter approving the loan. *See id.*

In answer to your questions, we conclude that as a general rule, the mayor or city manager of a city cannot, absent express authority, bind the city to a lease agreement if the city council has exclusive authority to enter into leases. However, the city may be estopped by the unauthorized actions of city officials in the exercise of a governmental function if necessary to prevent manifest injustice, and if there is no interference with the exercise of its governmental functions, or "if the evidence clearly indicates that the subordinate officer's act was done with the knowledge of the governing body and was so closely related to the expressed will of the governing body as to constitute his act that of the board or commission itself." *Bowman*, 801 S.W.2d at 604; *Prasifka*, 450 S.W.2d at 836.

## S U M M A R Y

As a general rule, the mayor or city manager of a city cannot, absent express authority, bind the city to a lease agreement if the city council has exclusive authority to enter into leases. The city may be estopped by the unauthorized actions of city officials, even in the exercise of a governmental function, in exceptional cases where necessary to prevent manifest injustice, and where there is no interference with the exercise of its governmental functions, or where the evidence shows that the subordinate officer's act was done with the knowledge of the governing body and was so closely related to the expressed will of the governing body as to constitute his or her act that of the governing body itself.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee