# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00243-CV

**Beth Hudspeth, Appellant**

**v.**

**Chapel Hill I.S.D. and Texas Education Agency, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
## NO. D-1-GN-04-003097, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Beth Hudspeth filed a grievance against Chapel Hill I.S.D. in Tyler for crediting her with only two years of teaching experience for purposes of the district pay scale rather than seven years of teaching experience.  She claims that she accepted a position at Chapel Hill I.S.D. based on a promise by the high school principal that she would be paid based on seven years of experience. Chapel Hill I.S.D. denied the grievance and the Commissioner of Education denied Hudspeth's appeal of the grievance.  The district court affirmed the Commissioner's decision.  On appeal to this Court, Hudspeth contends that the district court erred by affirming the Commissioner's decision because the Texas Education Agency's findings demonstrate that Chapel Hill I.S.D. is liable to Hudspeth for breach of contract or, alternatively, that Chapel Hill I.S.D. is liable to her under the theory of promissory estoppel.  We affirm the judgment of the district court.

**Factual and Procedural Background**

Hudspeth has been a special education teacher at Chapel Hill High School since August 2002. Before being hired by Chapel Hill I.S.D., she worked at Stepping Stone, a private school in Smith County, where her annual salary was close to $30,000. In June 2002, Greg Wright, the principal of Chapel Hill High School, called Hudspeth and asked her to interview for a teaching position. During the interview, Hudspeth told Wright that she had taught at Stepping Stone for nine and one-half years, seven of which were full-time. They did not discuss salary or the accreditation status of Stepping Stone at that time. Soon after the interview, Wright called and offered Hudspeth the teaching position. During their telephone conversation, Hudspeth asked about salary and again told Wright that she had seven years of full-time teaching experience. Hudspeth also asked Wright for $1,500 to be applied toward her tuition for an alternative certification program. Wright told Hudspeth that he needed to get permission from Chapel Hill I.S.D. Superintendent Joe Stubblefield before he could promise her a specific salary. Shortly thereafter, Wright called Hudspeth and told her that in accordance with her seven years of teaching experience, she would be paid an annual salary of $31,720, plus the $1,500 that she requested for tuition.

Based on these representations, Hudspeth orally accepted the position with Chapel Hill I.S.D. and stopped looking for other jobs.[1] Wright informed Hudspeth that the terms of her employment would be presented for approval at the June 24 meeting of the Chapel Hill I.S.D. Board of Trustees. The board approved the terms of her employment on June 24 and, shortly

---

[1] *See* Decision of the Designee of the Commissioner, Finding of Fact 7 ("Based on the salary representation, Petitioner stopped looking for other jobs, orally agreed to work for Respondent, and signed a probationary contract for the 2002-2003 school year.")

thereafter, Hudspeth signed a probationary contract for the 2002-2003 school year. On or about August 14, after Hudspeth had begun working for Chapel Hill I.S.D., Royce Sulser, Human Resources Director for Chapel Hill I.S.D., informed her that he had received her service record from Stepping Stone and that because Stepping Stone was accredited for only two of the seven years that she worked there full-time, Chapel Hill I.S.D. could only credit her with two years of teaching experience for the purposes of the pay scale. Sulser told Hudspeth that, as a result, her salary would be reduced to $26,390.

Hudspeth filed a grievance with Chapel Hill I.S.D. regarding her reduction in salary and appealed through three levels at Chapel Hill I.S.D., culminating with the denial of her appeal at a Level III Grievance Hearing before the board. Hudspeth appealed to the Texas Education Agency, which signed a final order denying her appeal on July 9, 2004. Hudspeth sought judicial review of the Texas Education Agency's decision, and on April 14, 2006, the district court affirmed the Commissioner's decision.

**Standard of Review**

A district court may not reverse the Commissioner's decision unless it was not supported by substantial evidence or the Commissioner's conclusions of law were erroneous. Tex. Educ. Code Ann. § 21.307(f) (West 2006). Substantial evidence review is a limited standard of review requiring "only more than a mere scintilla" to support an agency's determination. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000) (quoting *Railroad Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995)). In conducting a substantial evidence review, the court determines whether the evidence as a whole is such that reasonable minds could

3

have reached the same conclusion as the agency in the disputed action. *See Texas Educ. Agency v. Goodrich Indep. Sch. Dist.*, 898 S.W.2d 954, 957 (Tex. App.—Austin 1995, writ denied). The court may not substitute its judgment for that of the agency and may only consider the record on which the agency based its decision. *See id.*; *State v. Public Util. Comm'n*, 883 S.W.2d 190, 203 (Tex. 1994). The test is not whether the Commissioner reached the correct conclusion, but whether some reasonable basis exists in the record for his action. *Public Util. Comm'n*, 883 S.W.2d at 204. The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the appellant to prove otherwise. *Id.*

The question of whether an agency's determination meets the substantial evidence standard is one of law. *Montgomery*, 34 S.W.3d at 566. On questions of law, the trial court is not entitled to deference on appeal. *Texas Dep't. of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam). On appeal of the district court's judgment, the focus of the appellate court's review, as in the district court, is on the decision of the Commissioner. *Montgomery*, 34. S.W.3d at 562; *Tave v. Alanis*, 109 S.W.3d 890, 893 (Tex. App.—Dallas 2003, no pet.); *Goodie v. Houston Indep. Sch. Dist.*, 57 S.W.3d 646, 650 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

**Discussion**

Hudspeth contends that the district court erred in affirming the Commissioner's decision because the Texas Education Agency's findings demonstrate that Chapel Hill I.S.D. is liable to Hudspeth for breach of contract.

The elements of a breach of contract claim are (1) that a valid contract existed, (2) that the plaintiff performed or tendered performance, (3) that the defendant breached the contract,

and (4) that the plaintiff was damaged as a result of the breach. *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 121 (Tex. App.—Austin 2003, no pet.). The operational policies adopted by a school board before making an employment contract with a teacher form part of the contract and the teacher's employment is subject to those policies. *Perry v. Houston Indep. Sch. Dist.*, 902 S.W.2d 544, 547 (Tex. App.—Houston [1st Dist.] 1995, writ. dism'd w.o.j.); *Myrtle Springs Reverted Indep. Sch. Dist. v. Hogan*, 705 S.W.2d 707, 709 (Tex. App.—Texarkana 1985, writ ref'd n.r.e.).

Although Hudspeth's probationary contract is not included in the record, all parties agree that there was a valid contract. Testimony at the Level III Grievance Hearing indicates that the contract did not specify a dollar amount, but instead stipulated that Hudspeth would be paid in accordance with board policy. It is undisputed that Hudspeth has continued to work at Chapel Hill High School as a special education teacher and has fully performed her obligations under the contract. Hudspeth contends that the board breached the contract. She argues that because Wright and Stubblefield were acting as agents of the board within the scope of their apparent authority, the board is bound by their representation that her salary would be $31,720.

The superintendent of a school district acts as the agent of the board of trustees and his acts bind the board unless they are unauthorized. *Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 888 (Tex. 1990). A high school principal is not per se the agent of the board of trustees, but a school principal could act as an agent of the board if appointed to do so or if the requirements of an implied agency are met. *Welch v. Coca-Cola Enters., Inc.*, 36 S.W.3d 532, 540 (Tex. App.—Tyler 2000, pet. dism'd by agr.). To establish an implied agency or apparent authority to act as an agent, one must show that the principal either knowingly permitted its agent to hold

himself out as having authority or "showed such lack of ordinary care as to clothe the agent with indicia of authority." *Nationsbank, N.A. v. Dilling*, 922 S.W.2d 950, 952-53 (Tex. 1996). In determining whether an agent has apparent authority, a court may consider only the principal's conduct leading a third party to believe that the agent has authority. *Id.* at 953.

In this case, it is not Superintendent Stubblefield who made the salary representation to Hudspeth, but Principal Wright. There is no evidence that the board made any representation, express or implied, that Wright had the authority to negotiate Hudspeth's salary. It is undisputed that as a part of the discussion of salary with Hudspeth, Wright informed her that he would need to get approval from Stubblefield. Wright also informed Hudspeth that the terms of her employment would need to be approved by the board. Thus, when Wright told Hudspeth that her salary would be $31,720, he did not hold himself out as acting on behalf of the board. Because the board did not knowingly permit Wright to hold himself out as having authority, nor did it show a lack of ordinary care so as to clothe Wright with "indicia of authority," Wright was not acting as an agent of the board for the purposes of binding the board to the amount of Hudspeth's salary.

Even if Wright had the apparent authority to bind the board, the board is not liable for breach of contract. The $31,720 salary, which was based on Hudspeth's representation that she had seven years of full-time teaching experience, was not included in the probationary contract. Chapel Hill I.S.D. policy provides that no credit is given for work completed at unaccredited schools.[2] Chapel Hill I.S.D. policies form part of Hudspeth's contract, and she was paid in

---

[2] Chapel Hill I.S.D. board policy specifically incorporates the Commissioner's rules on creditable years of service, which specify that teaching credit is not awarded for work done at an unaccredited private school. *See* 19 Tex. Admin. Code § 153.1021(g) (2007).

accordance with those policies. Thus, the district court did not err in finding substantial evidence to support the Commissioner's conclusion that Chapel Hill I.S.D. did not breach its contract with Hudspeth.

Hudspeth also contends, in the alternative, that the district court erred in affirming the Commissioner's decision because the Texas Education Agency's findings demonstrate that Chapel Hill I.S.D. is liable to Hudspeth under the theory of promissory estoppel.

The requisites of promissory estoppel are (1) a promise, (2) foreseeability of reliance on the promise by the promisor, and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). The reliance must be reasonable and justified. *Id.* The general rule that estoppel does not apply to a unit of government exercising its governmental power is subject to several exceptions. *Bowman*, 801 S.W.2d at 888. Estoppel may apply to "municipalities and similar local units of government" when justice requires its application, and there is no interference with the exercise of governmental functions. *Id.* Estoppel may also apply when a school board's agent acts within the scope of his apparent authority, unless the acts were unauthorized. *Id.* Finally, estoppel may apply against a subdivision of government where the governing body is a board or commission if the evidence clearly indicates that the subordinate officer's act was done with the knowledge of the governing body and was so closely related to the expressed will of the governing body that the officer's act constitutes an act that of the board itself. *Id.* Hudspeth argues that her case falls within each of these exceptions.

First, Hudspeth argues that justice requires the application of estoppel and that there is no interference with the exercise of the board's governmental functions. This exception is

available "only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 774 (Tex. 2006) (quoting *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 836 (Tex. 1970)). This Court has also held that this exception is limited to municipalities. *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 595 (Tex. App.—Austin 1991, writ denied), *abrogated on other grounds by Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405-406 (Tex. 1997), *superseded by statute as stated in General Servs. Comm'n v. Little-Tex Insulation Co, Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *see also City of White*, 198 S.W.3d at 774 (referring only to municipalities in discussing this exception). The use of estoppel against a governmental unit under this exception is "clearly linked" to the proprietary actions of a municipality. *Dillard,* 806 S.W.2d at 594-95. Because a school district has no proprietary functions, estoppel cannot be applied to a school district under this exception. *Id.* We also hold that even if this exception could be applied to a school district, this case is not the "exceptional case where the circumstances clearly demand its application to prevent manifest injustice."

Next, Hudspeth argues that the board is bound by Wright's salary representation regardless of whether it had actual knowledge of it because Wright was an agent of the board acting within the scope of his authority. As discussed above, Wright was not an agent of the board for the purposes of binding the board to a salary amount. However, even if Wright was acting as an agent of the board under these circumstances, the acts of an agent of a board do not bind the board if the acts were unauthorized. *Bowman*, 801 S.W.2d at 888. The record contains no evidence that the salary that Wright quoted to Hudspeth was an exception approved by the board or that Wright was

authorized by the board to negotiate salaries greater than those provided in district policy. In addition, at the time that Wright told Hudspeth that she would be paid $31,720 based on seven years' experience, Chapel Hill I.S.D. had not yet received Hudspeth's teaching record and had no way of knowing that Stepping Stone was only accredited for two of those years.

Finally, Hudspeth argues that an exception to the general rule that estoppel does not apply to a governmental unit is appropriate because the evidence indicates that Wright acted with the knowledge of the board and that his act was so closely related to the will of the board as to constitute an act of the board itself. Hudspeth characterizes the "act" as Wright's offering her a job and states that the board "had to know" that Hudspeth had been offered a job at Chapel Hill I.S.D.. This is an incorrect application of this exception because none of the parties dispute that Wright offered the job to Hudspeth. Rather, the "act" at issue is Wright's representation that Hudspeth's salary would be $31,720. The record contains no evidence that the board had knowledge of this salary representation. In fact, the record indicates that the board routinely approves teachers' employment without knowledge of specific salaries. The transcript of the Level III Grievance Hearing shows a board member asking what is included in a teacher's contract regarding salary. Finally, the promise of $31,720 is not so closely related to the board's will as to constitute an act of the board itself. Absent an exception granted by the board, paying this salary to a teacher with only two years of experience at an accredited school is in direct conflict with board policy.

The record does not contain evidence to support any of the exceptions that Hudspeth asserts to the general rule that estoppel does not apply to a unit of government exercising its governmental power. Thus, the trial court did not err in determining that the Texas Education

9

Agency's findings did not demonstrate that Chapel Hill I.S.D. is liable on the theory of promissory estoppel.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   June 8, 2007