**CITY OF HUTCHINS, Texas, Petitioner,**

**v.**

**Frank J. PRASIFKA et al., Respondents.**

**No. B–1702.**

Supreme Court of Texas.

Feb. 18, 1970.

Saner, Jack, Sallinger & Nichols, B. Robert Baker, Dallas, for petitioner.

McKenzie & Baer, Joe E. Vaughan and Allen Joe Fish, Dallas, for respondents.

GREENHILL, Justice.

The plaintiffs, Frank, Louis and Jerry Prasifka, instituted this action to enjoin the City of Hutchins from interfering with their use of 44 acres of land within the

city. The city filed a cross-action to enjoin the Prasifkas from using their property in violation of a zoning ordinance.

Trial was to the court without a jury which resulted in a judgment that all parties take nothing. Findings of fact and conclusions of law were filed. Both the city and the Prasifkas appealed.[1] The Court of Civil Appeals reversed the trial court's judgment and, in effect, rendered judgment for the Prasifkas. 442 S.W.2d 879. That court rested its judgment upon what it considered to be the validation by the legislature of a resolution of the city council.

There are three main problems here:

(1) The city council zoned the city by *ordinance*. Later it purported to amend the ordinance by a *resolution*. Question: may a city zoning ordinance be amended by a resolution?

(2) After the adoption of the *resolution*, the legislature enacted a general validating act which will later be discussed herein. Question: what is the effect of the validating act?

(3) Is the city, in any event, estopped to enjoin the Prasifkas from using the property for "heavy manufacturing" purposes?

Our holdings are (1) that the zoning classification of an area of a city, having been enacted by ordinance, could not be changed by resolution; (2) that the general validating act did not change the resolution into an ordinance or give the resolution the force in law of an ordinance; and (3) that the city is not estopped.

The findings of fact of the trial court are set out in full in the opinion of the Court of Civil Appeals. A few additional facts will be set out under the estoppel point to be discussed later herein. As pertinent to this first point, the findings of fact are:

In 1958, the city adopted a comprehensive zoning ordinance which classified the area in question as "residential." In 1965, the city council enacted another comprehensive zoning ordinance; and in it, the land in question retained its classification as "residential." The 1965 ordinance also provided that "the governing body may from time to time enact, supplement, or change by *ordinance* the boundaries of the districts or the regulations herein established."

On November 7, 1966, the city council, upon the recommendation of the city planning commission, passed a resolution to reclassify the plaintiffs' (Prasifkas') tract from residential to manufacturing. The reclassification of the Prasifka tract to manufacturing was erroneously made on the map maintained in the city hall. No ordinance was enacted changing the classification from residential to manufacturing. The Prasifkas purchased the tract in question on or about September 18, 1967, after being advised by the city secretary that the zoning classification (manufacturing) shown on the map was correct so far as she knew. The Prasifkas relied solely on the map which designated the tract as manufacturing. On or about September 18, 1967, the mayor, who was on unfriendly terms with the Prasifkas, advised the city council and the plaintiffs that he did not consider the map then on display as accurate with respect to the Prasifka tract and that such tract was still classified as residential. After September 18, 1967, the Prasifkas made application to the council to change the classification of the tract to manufacturing, but no further action was taken. The comprehensive ordinance contains a penalty for its violation.

1. The Prasifkas gave notice of appeal in the trial court and filed an appeal bond, but filed their brief in the Court of Civil Appeals as "Brief for Appellee." Their cross-point in that court on estoppel will be dealt with herein.

Emphasis in this opinion is the Court's. References to statutes are to Vernon's Texas Civil Statutes Annotated.

We turn to the first question: may the comprehensive zoning ordinance be changed by a resolution? We read the cases to answer the question in the negative. The early case of City of San Antonio v. Micklejohn, 89 Tex. 79, 33 S.W. 735 (1895), holds that a public office (superintendent of public works) established by ordinance could not be abolished by resolution. The Court pointed out some of the distinctions between the functions of ordinances and resolutions. Its conclusion was that:

"* * * It takes a law to repeal a law. The act which destroys should be of equal dignity with that which establishes. A resolution proper is not a law. [citation omitted] A legislative body may in that form [by resolution] express an opinion, may govern its own procedure within the limitations imposed upon it by its constitution or character, and, in case it have ministerial functions, may direct their performance; but it cannot adopt that mode of procedure in making laws where the power which created it has commanded that it shall legislate in a different form. * * *

"* * * There is therefore an essential difference between an *ordinance* of the city of San Antonio and a *resolution* of its council."

An important reason in zoning matters for dealing with changes by *ordinance,* especially where, as here, the governing law requires it, is that zoning affects the community, or at least large segments of it, as well as the particular individual. There is good reason for procedural requirements of notice and hearing which are generally required for the adoption of ordinances; and such notice and hearing are generally not required for the adoption of mere resolutions or motions.

One of the most recent holdings on this point is Red Bird Village v. State ex rel. City of Duncanville, 385 S.W.2d 548 (Tex. Civ.App.1964, writ refused), which holds

an ordinance may be repealed only by another ordinance and not by resolution or motion. See also City of Panhandle v. Bickle, 31 S.W.2d 843 (Tex.Civ.App.1930, writ dismissed); Harvey v. City of Seymour, 14 S.W.2d 901 (Tex.Civ.App.1929, no writ, by the late Chief Justice Hickman); and Clesi v. Northwest Dallas Improvement Association, 263 S.W.2d 820 (Tex.Civ.App.1953, writ refused, n. r. e.).

These Texas cases appear to be in accord with the rule elsewhere. The rule is stated in 8A McQuillin on Municipal Corporations 164 (3rd Ed. 1965):

"Generally, rezoning of use districts or changes of uses and restrictions within a district can be accomplished only through an amendment of the zoning ordinance, and the amendment must be made in the same mode as its original enactment. * * * Generally, the amendment can be effected only by an ordinance enacted by the municipal legislative body, and not by a mere resolution or order."

The rule is also stated in the same edition of McQuillin in volume 6, section 21.13.

Our holding is, therefore, that the *resolution* purporting to change the zoning classification of the property in question was not effective, that the comprehensive zoning *ordinance* could not be changed or amended by *resolution,* and that the property in question was still residential under the comprehensive zoning ordinance.

*The Validating Act*

The opinion of the Court of Civil Appeals dwells on the *power* of the legislature to validate the governmental action of cities. The extent of such power is not before us; and it is not necessary to be drawn into a discussion of opinions of other Court of Civil Appeals cited below as to whether the legislature *could* validate certain municipal acts or not.

The problem before us, and our holding thereon, is a fairly narrow one: what did the legislature validate?

■ The statute, codified as Article 974d–12, says in part that the incorporation proceedings of all cities incorporated under the general laws are validated; the boundary lines are validated; and "all governmental proceedings performed by the governing bodies of all such cities and towns and all officers thereof since their incorporation or attempted incorporation are hereby in all respects validated as of the date of such proceedings."

We agree with the conclusion of law of the trial court that if there had been any irregularity in the adoption of the 1965 comprehensive zoning ordinance, it was the intention of the legislature that it be cured; and such ordinance was validated.

Similarly, if there had been irregularities in the adoption of the November 7, 1966, resolution, they would be cured, and the resolution was validated. But we see no intention on the part of the legislature to change a resolution (or motion) into an ordinance, or to give every motion or resolution the force and effect of a law as would be the case in the enactment of an ordinance. The resolution was validated as a resolution.

■ If the law were as contended by the logic of counsel for the Prasifkas, penal laws could be enacted by simple motion or resolution; and if such motions or resolutions were all validated by Article 974d–12, people could be penalized for the violation of motions or resolutions [laws] of which they never heard. There need have been no notice, even to councilmen, no hearing, and no publication of the motion or resolution. Or the city council, on oral motion or resolution quickly passed by voice vote, could enact a provision amending the city's charter; and if the general validating act had the effect of making the resolution into law, the charter would be so amended. We cannot ascribe to the legislature any such intention. Accordingly we hold that the resolution of November 7, 1966, purporting to change the zoning classification from residential to heavy manufacturing was not "validated" into an ordinance. Such resolution could not amend the comprehensive zoning ordinance of 1965; and the land was still legally zoned "residential."

## Estoppel

■ Under the above holdings, we would reverse the judgment of the Court of Civil Appeals. Under such circumstances, we must examine the brief of the Prasifkas, the prevailing party in the Court of Civil Appeals, to determine whether there is another ground upon which the judgment of that court should be affirmed. Meyer v. Great American Ind. Co., 154 Tex. 408, 279 S.W.2d 575 (1955); McKelvy v. Barber, 381 S.W.2d 59 (Tex.Sup.1964); Southwestern Bell Telephone Co. v. Johnson, 389 S.W.2d 645 (Tex.Sup.1965).

The Prasifkas had a cross-point in that court that the trial court "erred *as a matter of law* in not equitably estopping the City of Hutchins from denying the validity of the November 7, 1966 zoning action and erred *as a matter of law* in not presuming the governmental acts on November 7, 1966, to be valid."

The cross-point centers on the city's action on November 7, 1966. On that date the city council adopted the recommendation of its planning commission and passed the resolution purporting to change the zoning. It also directed that the zoning map on its wall be changed to conform to the resolution. This was done. The Prasifkas relied on such action and the map in the purchase of the property, under the trial court's fact findings.

The other facts on the question of estoppel are far from satisfactory; but they are enlarged, as relevant here, and set out below in roughly a chronological order.

The City of Hutchins apparently has not been zoning at all for many years. It is stipulated that "during the period of years

from 1958 to 1965, all zoning ordinances excepting the 1958 Comprehensive Zoning Ordinance, if any, were misplaced, or lost or destroyed." The trial court's findings of fact, which are not attacked, state that in the 1958 comprehensive zoning ordinance, and as reflected on its map, the Prasifka tract was zoned "residential."

In his deposition, Mr. Robert A. Hollin, a municipal planning consultant living in Dallas, testified that he had been retained in 1960, without pay [at least at first], to assist the City of Hutchins. He was familiar with the 1958 ordinance, and remembered the 44 acres [Prasifka's property] as being residential. He prepared a zoning map for the 1958 ordinance which he just copied from one on the wall at the city hall.

Hollin's firm was, among other things, "retained" to prepare a new zoning ordinance. He undertook to do this in 1962. Hollin recommended that the residential classification of the 44 acres be continued. Hearings were had in 1964 on the new zoning ordinance. The 1965 comprehensive zoning ordinance apparently was adopted following these hearings. The trial court found that the 1965 ordinance continued this 44 acres as "residential."

Apparently some time later, Hollin was told by a Mr. Gross, a city employee, that some zoning changes had been made and that the city wanted the zoning map brought up to date; and they wanted some fresh new copies. So Hollin sent an associate, Jerry Hutcherson, down to Hutchins. In making the "new" map, he copied the map which hung on the wall in city hall with the classifications shown on it. Hollin testified that neither he nor his associate Hutcherson were shown, nor did they examine, any zoning ordinances or other official data.

In any event, the "new map" was prepared in Hollin's office and hung on the wall for several months with the "HM" classification on the 44 acres.

Meanwhile in 1966, Mr. Frank Prasifka, the principal plaintiff, had been appointed to the city's planning commission, and he also became its chairman in 1966. That commission passed a resolution to reclassify the 44 acres in question, then classified beyond question as residential, from residential to manufacturing. Mr. Prasifka testified that (since he was interested in the property) he did not participate in the vote and stepped out of the room when the vote was taken. On November 7, 1966, the resolution was passed by the city council, upon the planning committee's recommendation, to change the classification to heavy manufacturing. The map was then changed.

There is a good deal of evidence about the difficulties between the mayor and the Prasifkas, and the treatment of other lands and landowners in the area as to zoning. As relevant here, however, Frank Prasifka, relying on the map and the statement of the city secretary that the map was correct as far as she knew, made arrangements to purchase the land on September 1, 1967. The extent of those arrangements is not set out. On that date, the map showed "HM" (heavy manufacturing). The trial court found that the Prasifkas purchased the property "on or about September 18, 1967" in reliance on the map. The price of the 44 acres was $70,000.

At some time between September 1 and September 18, 1967, the city secretary struck out "HM" from the zoning map and wrote in red pencil above "HM" the letter and figure "R–1," meaning residential. She did not remember who told her to make the change, but she did remember that the city attorney, Mr. Baker, had told her that proper zoning procedures had not been taken [to change the classification to HM].

On the night of September 18, Frank Prasifka appeared before the council to request a permit to move his tires onto the 44 acres. The mayor then told him that the map on the wall had been wrong and that the property was residential. Prasifka then agreed to make a request to change the classification to manufacturing, and he

did so. That zoning change was not made. On the same night, Prasifka moved a great number of tires onto the property.

There is some testimony about Prasifka pouring a foundation for a building on the 44 acres. The mayor testified that this foundation work was done *after* September 18, and his testimony was not disputed. There is also some testimony that after September 18, Prasifka got a permit to build six houses on the 44 acres; and the inference is possible that the foundation was poured in connection with that permit.

In any event, so far as we can tell from the record, there is no specific testimony as to what the foundation was for, when it was poured (except that it was after September 1, 1967), or what amount of money was spent. Apparently at the time of trial, there was nothing on the land except the tires and the partial foundation mentioned; and the classification of the property was still residential.

One of the conclusions of law of the trial court was that "the City of Hutchins is not estopped from classifying the land as residential since the plaintiffs [Prasifkas] failed to properly investigate and determine the true classification of such tract."

■ The general rule has been in this state that when a unit of government is exercising its governmental powers, it is not subject to estoppel. City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W. 2d 308 (1936) [no estoppel against a city to assert a tax lien]; Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74 (1946) [no estoppel against a city to assert a tax foreclosure]; Texas Company v. State, 154 Tex. 494, 281 S.W.2d 83 (1955) [no estoppel against the State the recover lands and minerals of the State due to the acts and conduct of its officers and agents]; and City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W.2d 218, 73 A.L.R.2d 640 (1958) [no estoppel against a city to exercise its police power in preventing a curb cut and a driveway across a sidewalk].

■ This general rule has been applied in a number of cases involving a city's exercise of its zoning powers (which have been classified as part of its police power). City of Amarillo v. Stapf, 129 Tex. 81, 101 S.W.2d 229 (1937); City of Fort Worth v. Johnson, 388 S.W.2d 400 (Tex.Sup.1964) [involving laches, a close kinsman of estoppel]; Edge v. City of Bellaire, 200 S.W.2d 224 (Tex.Civ.App.1947, writ refused).

An opinion of our late Chief Justice Hickman, above referred to, written while he was Chief Justice of the Eastland Court of Civil Appeals, bears factual similarity to this case. Harvey v. City of Seymour, 14 S.W.2d 901 (Tex.Civ.App.1929, no writ). A city ordinance prohibited the erection of a cotton gin in a particular area. Thereafter prospective purchasers appeared before the city council to request that the ordinance be changed. A *motion* was made and seconded that the ordinance be amended to exclude this property from the ordinance. It passed 3 to 1; and it was considered that the zoning classification had thus been changed. The next day, other property owners appeared and protested to the council. The property was purchased for a substantial price in reliance on the *motion,* and building materials were moved on the property. And as here, there was then an attempt to change the former ordinance by a new *ordinance;* but it failed. The city then brought an action against the purchasers of the property to enjoin the erection of the gin.

The Chief Justice wrote, "This statement of facts discloses that appellants have probably been injured on account of their reliance upon the action of the city council on April 25th in passing the motion above mentioned, but their injury is not one for which the law provides any relief. The motion of April 25, 1927, was not an ordinance." The court affirmed the issuance of the injunction in favor of the city.

There is authority for the proposition that a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions. But such doctrine is applied with caution and only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice. 28 Am.Jur.2d, Estoppel and Waiver, §§ 128 and 129; City of Dallas v. Rosenthal, 239 S.W.2d 636 (Tex. Civ.App.1951, writ refused, n. r. e.). Under the facts set out above, we find no such exceptional case here. And while the method, or lack of it, of the City of Hutchins with regard to its zoning ordinances, regulations, and maps, leaves a great deal to be desired, the zoning laws of a city may not be changed by unauthorized resolution or by the unauthorized changing of zoning maps.

The judgments of the Court of Civil Appeals and the trial court are reversed, and the cause is remanded to the trial court with directions to grant a permanent injunction restraining and enjoining use of the property in violation of the ordinance.