The CITY OF SAN MARCOS, Texas, Appellant,

v.

R.W. MCDONALD DEVELOPMENT CORPORATION, et al, Appellees.

No. 14513.

Court of Appeals of Texas, Austin.

Nov. 6, 1985.

Rehearing Denied Dec. 18, 1985.

Timothy Patton, Groce, Locke & Hebdon, San Antonio, for appellant.

Richard L. Crozier, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, for R.W. McDonald Development Corp.

Lee C. Clyburn, Fulbright & Jaworski, Austin, for Walter Burnett, County Judge and Raphael Gonzales, Dan Campos, Craig Payne, and Leonard C. McCarty, County Com'rs.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

SHANNON, Chief Justice.

The City of San Marcos appeals from the judgment rendered by the district court of Hays County which denied the city certain declaratory and injunctive relief pertaining to the development of a subdivision outside the city's boundaries but within its extraterritorial jurisdiction. Appellees are R.W. McDonald Development Corporation (McDonald) and the members of the Commissioners Court of Hays County. This Court will reverse the judgment of the district court.

San Marcos is a home-rule city with extraterritorial jurisdiction extending two miles beyond its corporate limits. McDonald owns a fifty-acre tract, "The Woods of McCarty Lane," situated outside the city's boundaries but within its extraterritorial jurisdiction. A part of the tract is located over the Edwards Aquifer Recharge Zone. McDonald desires to subdivide and develop the acreage for residential purposes.

Claiming to have complied with all prerequisites, McDonald tendered its final plat to the County Clerk of Hays County for recordation.

By its suit, San Marcos sought, among other things, a declaration that because McDonald had not complied with the city's subdivision ordinances, the developer had no right to record its final subdivision plat and no right to proceed with development of the subdivision. The city claimed, as well, that McDonald obtained the approval of the city's planning commission by misrepresentations concerning the water supply company serving the subdivision.

McDonald's defense was that the city, by its conduct, was estopped to assert that McDonald had not complied with the appropriate ordinances.

After a bench trial, the district court rendered judgment rejecting the city's contentions, and declaring *inter alia* that San Marcos lacked authority to interfere with the development of the subdivision. The court also declared that the subdivision could be served by a water supply company not appearing on the face of the plat.

San Marcos asserts error by many points, but its pivotal claim is that the district court erred in determining that con-

duct of city officials estopped it from insisting upon compliance with its Interim Drainage and Erosion Control Ordinance (Interim Ordinance). Although the district court found that the city officials "led McDonald reasonably to believe that the Subdivision improvements would not have to comply with the [Interim Ordinance] ...", the court did not specify what acts led McDonald to this belief, nor did the court specify whether these unnamed acts were authorized.

The city's Interim Ordinance regulates the development of land located on hillsides or in areas with soil subject to erosion. The city's general subdivision ordinance requires that the subdivider meet all the requirements of the Interim Ordinance at the time the final plat is submitted to the planning commission. The general subdivision ordinance also provides that the planning commission, under certain circumstances, may authorize a "variance" from compliance with subdivision ordinances, including probably the Interim Ordinance. If the planning commission elects to grant a variance, such variance must appear of record in the commission's official minutes. The Interim Ordinance itself authorizes the city council, upon a finding of special circumstances, to grant variances from its terms. The council's grant or denial of a requested variance must also be in writing.

McDonald never complied with the Interim Ordinance requirements. Although McDonald requested a variance from the Interim Ordinance, neither the city council nor the planning commission formally granted such a variance. McDonald points to evidence, however, which it claims lends support to its estoppel claim.

On June 19, 1984, after the planning commission approved the preliminary plat for "The Woods of McCarty Lane," McDonald's engineer, Kelly Kilber, wrote to City Director of Public Works George Boeker, stating that the planning commission had granted McDonald a variance from all the requirements of the Interim Ordinance. Boeker received Kilber's letter but did not discuss its contents with other city officials. Instead, Boeker merely routed it to other departments. Boeker did not respond to the statement in Kilber's letter because he had already delegated all authority regarding the Interim Ordinance to the city engineer.

At its meeting on November 27, 1984, the planning commission approved the final plat of the The Woods subdivision. There was no discussion at this meeting as to the effect of the Interim Ordinance on the subdivision.

■ This Court has concluded, as a matter of law, that the city was not estopped to insist upon compliance with its Interim Ordinance. Generally, a unit of government exercising its governmental powers cannot be estopped by its officials' unauthorized or negligent acts. *City of San Antonio v. Pigeonhole Parking of Texas*, 158 Tex. 318, 311 S.W.2d 218 (1958) [no estoppel against a city to exercise its police power in preventing a curb cut and a driveway across a sidewalk]; *Texas Company v. State*, 154 Tex. 494, 281 S.W.2d 83 (1955) [no estoppel against the State to recover lands and minerals of the State due to the acts and conduct of its officers and agents]; *Rolison v. Puckett*, 145 Tex. 366, 198 S.W.2d 74 (1946) [no estoppel against a city to assert a tax foreclosure]; and *City of San Angelo v. Deutsch*, 126 Tex. 532, 91 S.W.2d 308 (1936) [no estoppel against a city to assert a tax lien].

The rule has been applied in a number of cases involving a city's exercise of its zoning powers. *City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex.1970); *City of Fort Worth v. Johnson*, 388 S.W.2d 400 (Tex. 1964); [involving laches, a close kinsman of estoppel]; *City of Amarillo v. Stapf*, 129 Tex. 81, 101 S.W.2d 229 (1937); *Edge v. City of Bellaire*, 200 S.W.2d 224 (Tex.Civ. App.1947, writ ref'd).

This Court does not view the conduct of the city officials as supportive of the district court's finding of estoppel. The city officials and planning commission members, in reviewing the subdivision plat, were exercising a governmental function. *City of Hutchins v. Prasifka, supra.*

Boeker probably retained no authority regarding the Interim Ordinance when he received Kilber's letter. Were he possessed of such authority, his failure to act upon the letter would be a negligent act or omission. *City of San Angelo v. Deutsch, supra.* Moreover, McDonald and Kilber can hardly justify reliance on Boeker's silence to indicate that a variance from the Interim Ordinance had been granted, since Kilber admitted that he was aware that it was his responsibility to ensure that a variance had been properly granted.

McDonald's strongest claim for estoppel is that the planning commission's approval of his final plat was an authorized act which estopped the city. It is true, of course, that the planning commission approved McDonald's final plat and that it was the agency empowered to do so. Furthermore, the city's general subdivision ordinance specifies that all requirements of the Interim Ordinance shall have been met at the time of final plat submission. Yet the planning commission, the body specifically authorized to grant variances to the subdivision ordinance and to approve final plats, approved McDonald's final plat without considering the requirements of the Interim Ordinance, and when this omission was called to the commission's attention, it made no attempt to revoke the plat.

The failure of the planning commission to address the requirements of the Interim Ordinance must be viewed as a negligent or unauthorized performance of its functions. A municipality may not be estopped by unauthorized acts of its officials which conflict with a city ordinance. *Davis v. City of Abilene,* 250 S.W.2d 685 (Tex.Civ. App.1952, writ ref'd).

McDonald relies upon *Rosenthal v. City of Dallas,* 211 S.W.2d 279 (Tex.Civ.App. 1948, writ ref'd n.r.e.) and *City of Dallas v. Rosenthal,* 239 S.W.2d 636 (Tex.Civ.App. 1951, writ ref'd n.r.e.). As we understand, *Rosenthal* announced a general equitable exception to the rule of non-estoppel of municipalities. A city may be estopped when right and justice, honesty and fair dealing require it, and a city seeking eq-

uitable relief must do equity. *Id.* at 645, 646.

Under the *Rosenthal* rule, as elaborated by the Supreme Court in *Prasifka,* "a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions. But such doctrine is applied with caution and only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice". 450 S.W.2d at 836. In *Prasifka,* the Supreme Court held, however, that the city was not estopped to enforce its zoning ordinance even though the Prasifkas had relied on an invalid city council resolution purporting to change their zoning status.

*Prasifka* suggests that the *Rosenthal* rule should be invoked rarely, if ever, to defeat a city's exercise of its zoning powers. The same caution applies to a city's efforts to control drainage and erosion. This Court has concluded that the circumstances of this appeal do not clearly demand application of the *Rosenthal* rule to prevent manifest injustice. *City of Hutchins v. Prasifka, supra.* Although the method, or the lack of it, of the City of San Marcos with regard to enforcing its subdivision ordinances leaves a great deal to be desired, those ordinances may not be thwarted by unauthorized or negligent acts of its officials and agencies. The city's point of error is sustained.

The city insists that the district court also erred in refusing to find that McDonald obtained the final plat for The Woods by fraudulently representing that McCarty Lane Water Supply Company, Inc., was an approved water supply system. The district court found, to the contrary, that McDonald's representations were not fraudulent under the circumstances. The city's consistent position has been that any rights acquired by McDonald through the city's plat approval were unenforceable due to McDonald's fraud.

The "water system statement" required by the general subdivision ordinance and signed by Robert W. McDonald as presi-

dent of McCarty Lane Water Supply, Inc., describes the water supply company as "an approved water supply company." McCarty Lane Water Supply, Inc., was not an approved water supply company when McDonald signed the plat on November 20, 1984, nor when the planning commission finally approved the plat.

To qualify as an approved public water supply system, McCarty Lane Water Supply, Inc., had to be approved by both the Public Utility Commission and the Texas Department of Health. McDonald and his engineer knew that McCarty Lane Water Supply, Inc., could not service The Woods until they obtained approval from these agencies and they also were aware of the procedure to obtain that assent.

At the time McDonald represented that McCarty Lane Water Supply, Inc., was "approved," his company had not applied for approval to either the Public Utility Commission or the Texas Department of Health. In fact, he never applied to the Public Utility Commission for approval and he did not obtain preliminary approval from the Texas Department of Health until more than two months after he signed the final plat. McDonald and his engineer knew that a developer could not receive final approval from the city without signing the water system statement required by the general subdivision ordinance. The record establishes that the city relied on McDonald's water system statement and that the planning commission would not have given its final approval to the plat but for the signed water system statement.

The city argues that irrespective of McDonald's moral culpability, such representations constituted "legal fraud." This Court has defined legal fraud as "the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Capitol Rod & Gun Club v. Lower Colo. River Auth.*, 622 S.W.2d 887, 892 (Tex.App.1981, writ ref'd n.r.e.). *Accord, Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964).

It appears to this Court that as a matter of law, McDonald's misrepresentations constitute legal fraud because those representations had a "tendency to deceive" the city and the planning commission and to "injure the public interest" by representing falsely that adequate, unpolluted water was available to future residents of the proposed subdivision. The point of error is granted.

The judgment of the district court is reversed, and judgment is here rendered vacating, in all respects, the plat of The Woods subdivision. McDonald is here ordered to comply with all requirements of the city's subdivision ordinance and its Interim Ordinance and, further, McDonald is here ordered to refrain from any further development or construction at The Woods subdivision which does not fully comply with the city's ordinances. Finally, judgment is here rendered for the city for $11,000.00 in attorney's fees.