

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00183-CV

Trece **MEUTH**,
Appellant

v.

**CITY OF SEGUIN**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 14-0546-B-CV
Honorable William Old, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:          Sandee Bryan Marion, Chief Justice
                    Karen Angelini, Justice
                    Irene Rios, Justice

Delivered and Filed:  February 15, 2017

AFFIRMED

Trece Meuth appeals the trial court's order granting a plea to the jurisdiction filed by the City of Seguin. With regard to her takings claim, Meuth contends the trial court erred in granting the plea because she pled a viable takings claim. With regard to her declaratory judgment claim, Meuth contends the trial court erred in granting the plea on the basis that her declaratory judgment claim was a claim for monetary damages. With regard to her other claims, Meuth contends the trial court erred in granting the plea because the City was engaged in a proprietary function or, in

the alternative, if the City was engaged in a governmental function, the City is estopped from asserting immunity from those claims. We affirm the trial court's order.

## BACKGROUND

Prior to the City annexing the property located at 628 Gloria Drive, Seguin, Texas ("Property"), a storm water drainage culvert pipe was constructed underneath the Property which drained into the Guadalupe River. After the City annexed the Property in 1965, the property owner(s) constructed a house over the storm water drainage culvert pipe.

In March of 2014, Meuth sued the City alleging numerous causes of action. In her petition, Meuth alleged she contacted the City in March of 2012 when she was negotiating to purchase the Property from her siblings out of an estate that was in litigation. Meuth also alleged she informed the City the storm water drainage culvert was not located in the drainage easement the City had across the Property. Meuth further alleged the City stated it was responsible for the storm water drainage culvert. The City also allegedly stated "it would correct the mistake and repair the property by filling in the culvert, replacing the lost soil, and building a new drainage culvert in a location with a legal easement." Meuth asserted a takings claim, a declaratory judgment claim, a claim for intentional and negligent misrepresentations, a claim for fraud in a real estate transaction, a claim for gross negligence, and a claim for injunctive relief.

The City filed a plea to the jurisdiction. After a hearing, the trial court granted the plea and subsequently severed Meuth's claim for injunctive relief into a separate cause. Meuth appeals.

## JURISDICTION

The City contends Meuth did not timely file her notice of appeal. This contention is based on the City's belief that the trial court's order granting the City's plea to the jurisdiction was a final order. The record, however, establishes that the trial court's order did not dispose of Meuth's

claim for injunctive relief.[1]  Therefore, the trial court's order was not a final order until the trial court granted the motion to sever that claim into another cause. *See Doe v. Pilgrim Rest Baptist Church*, 218 S.W.3d 81, 82 (Tex. 2007) (noting severance makes interlocutory order final). Meuth's notice of appeal was timely filed after the severance order was signed.

## STANDARD OF REVIEW

Immunity from suit implicates a court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Hous. Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 160 (Tex. 2016).  "As subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo." *Id*.  If the plea to the jurisdiction challenges pleadings, we liberally construe the pleadings to determine if the plaintiff has "alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id*. (internal quotations omitted).  If the plea to the jurisdiction challenges the existence of jurisdictional facts which also implicate the

---

[1] The City's plea to the jurisdiction refers only to the following claims: (1) takings claim; (2) gross negligence and negligent misrepresentation claim; (3) intentional misrepresentation and fraud in a real estate transaction; and (4) declaratory judgment action.  In addition to alleging each of those claims, Meuth separately alleged a claim for injunctive relief in her petition as follows:

**XIV.**
**INJUNCTIVE RELIEF**

26.     As set out above and throughout, Plaintiff has notified Defendant and Defendant has actual notice of the curb, inlet structure, and drainage pipe used by the City of Seguin to drain water from the City streets.
27.     To date, Defendant, City of Seguin, claims the right to keep and maintain the drainage pipe on Plaintiff's land.  Defendant has refused to remove the drainage pipe, or any part of it, from Plaintiff's land.
28.     Plaintiff's property is of great value.  Plaintiff is and will be prevented from occupying her land for rents or value because of the encroachment and trespass of the City of Seguin's drainage pipe.  Defendant's encroachment and trespass has greatly diminished the value and potential of Plaintiff's land, has made the land unuseable and unsaleable for the reasons set forth.  As a direct result of the encroachment and trespass, Plaintiff has suffered great injury, to Plaintiff's property in an account within the jurisdictional limits of this Court.  Under these circumstances, damages at law for future injury cannot be measured with any degree of accuracy and hence would be an inadequate remedy for Plaintiff.  Consequently, the issuance of a mandatory injunction is necessary.  Issuance of a mandatory injunction is also necessary to prevent continuing injury by Defendant to Plaintiff which will develop into a more dangerous situation if an injunction does not issue.
29.     The drainage pipe used by the public and the City of Seguin extends into Plaintiff's land below the surface.  To remove the drainage pipe, Plaintiff would have to remove a considerable amount of soil from her land, which would entail prohibitive costs and irreparable damage to Plaintiff.

merits of the case, "we consider relevant evidence submitted by the parties to determine if a fact issue exists." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632-33 (Tex. 2015). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Id*. at 633. "If the evidence creates a fact question regarding jurisdiction, the plea must be denied pending resolution of the fact issue by the fact finder." *Id*. "If the evidence fails to raise a question of fact, however, the plea to the jurisdiction must be granted as a matter of law." *Id*.

### TAKINGS CLAIM

Sovereign immunity does not shield a governmental entity from a takings claim. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 592, 598 (Tex. 2001); *City of Dall. v. VRC LLC*, 260 S.W.3d 60, 64 (Tex. App.—Dallas 2008, no pet.). "Whether particular facts are enough to constitute a taking is a question of law." *Gen. Servs. Comm'n*, 39 S.W.3d at 598.

To state a valid takings claim, a plaintiff must allege: (1) an intentional governmental act; (2) that resulted in his property being taken; (3) for public use. *Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016); *Gen. Servs. Comm'n*, 39 S.W.3d at 598. "Only affirmative conduct by the government will support a takings claim." *Harris County Flood Control Dist.*, 499 S.W.3d at 799. "A government cannot be liable for a taking if it committed no intentional acts." *Id*. at 800 (internal citations omitted). Accordingly, "the law does not recognize takings liability for a failure to" act. *Id*.

In its plea to the jurisdiction, the City asserted Meuth had failed to allege a viable takings claim because Meuth had not alleged the City engaged in any intentional act which resulted in a taking of her property for public use. In her reply brief, Meuth asserts, "The City's intentional acts that qualify as a taking include: (1) annexing the Meuth property with a drainage system in place that diverts neighborhood storm water toward Meuth's property and into the pipe running across

Meuth's property, (2) the City permitting the home to be built atop the drainage pipe in 1974 after it had annexed the land, and (3) the City affirmatively using and maintaining, post-annexation, the illegal and leaking drainage system running beneath Meuth's house to drain the subdivision's rain storm waters instead of developing a legal drainage system running south of Meuth's property where the City's drainage easement is located."

Although Meuth attempts to phrase her claim as an intentional act, neither the annexation nor the permitting of the house resulted in her property being taken for public use. With regard to the allegation that the City continued to use the storm water drainage culvert after annexation, Meuth relies on cases involving recurrent flooding to assert the City's diversion of recurrent storm waters is an intentional act. In *Harris Cty. Flood Control Dist.*, however, the Texas Supreme Court noted that the governmental entities in those cases knew flooding would result from affirmative projects being undertaken by the entities. 499 S.W.3d at 806 (discussing *Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532 (Tex. 2013) and *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546 (Tex. 2004)).[2]

Unlike the cited cases, in this case, Meuth did not allege in her petition that the City constructed the storm water drainage culvert which was in place prior to the City's annexation of the Property. In fact, in her brief, Meuth quotes statements made by her attorney at the hearing to assert the origin of the pipe is unknown.[3] Instead, the allegations in Meuth's petition are focused

---

[2] In *Kopplow Dev., Inc.*, the takings claim arose from the city's construction of a regional storm water detention facility. 399 S.W.3d at 534. In *Gragg*, the takings claim arose from the governmental entity's construction and operation of a reservoir. 151 S.W.3d at 549. Similarly, in *Kerr v. Tex. Dep't of Transp.*, 45 S.W.3d 248, 251 (Tex. App.—Houston [1st Dist.] 2001, no pet.), which is cited by Meuth, the plaintiffs alleged a takings claim based on the construction of a highway and feeder lanes which allegedly caused flooding that damaged their homes.

[3] In the quoted language, Meuth's attorney stated no one present in the courtroom was there when the pipe was laid, and he believed the pipe was laid in the wrong place. In response to the trial court's statement that the city engineer was not involved in the initial laying of the pipe, Meuth's attorney stated, "We agree with that."

on the City's failure to take action to repair the storm water drainage culvert. In the factual background of her petition, Meuth asserted:

> The City's drainage culvert is a corrugated steel culvert which has corroded and is in disrepair. The encroaching and trespassing corroded pipe allows water to penetrate the soil around the pipe causing unstable soil creating a nuisance increasingly whenever it rains. Moreover, the joints in the pipe have separated and further caused instability of the soil underneath the Plaintiff's house.

Specifically, in regard to her takings claim, Meuth alleged:

> a.      Defendant had a duty to maintain its water drainage systems, including the subject curb, inlet, and culvert, which is for public use.
>
> b.      Defendant annexed an as built drainage culvert in a location with no legal easement. This was an intentional act to place Plaintiff's property under the authority of the City of Seguin.
>
> c.      Defendant was notified of the damage occurring to the property as a result of the corrosion of the drainage culvert and erosion of soils.
>
> d.      Defendant fails to repair its drainage culvert underneath Plaintiff's structure and fails to protect the health and welfare of its citizens knowingly and intentionally.
>
> e.      Defendant knew the disrepair was/is substantially certain to be causing erosion of the property is encroaching and trespassing on Plaintiff's property and creating a nuisance.
>
> f.      The City of Seguin's action and inactions have resulted in a taking of Plaintiff's property.

The allegations in the instant case are similar to those in *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191 (Tex. App.—Dallas 2010, no pet.). In *AN Collision Ctr. of Addison, Inc.*, the Town of Addison purchased an airport that had previously been constructed and operated by a third party. *Id*. at 192. AN Collision, which owned property adjacent to the airport, sued Addison alleging it intentionally diverted rainwater from the airport onto AN Collision's property with knowledge that flooding of its property would result, was resulting, or was substantially certain to result. *Id*. at 193. In response to Addison's contention that AN Collision

could produce no evidence that Addison had engaged in an intentional act, AN Collision asserted Addison knew the flooding was substantially certain unless Addison acted to alleviate the diversion of the rainwater. *Id*. at 194.

The Dallas court noted the flooding was not caused by the continued operation of the airport but by the manner in which the airport was constructed; however, Addison did not construct the airport or take any action that increased the diversion of the rainwater. *Id*. at 194-95. The Dallas court concluded Addison's failure to correct the problem was not an intentional act, asserting, "A failure to act, including a failure to take corrective measures, is not enough to rise to the level of a taking." *Id*. at 196.

Similarly, in *Bell v. City of Dall.*, 146 S.W.3d 819, 821 (Tex. App.—Dallas 2004, no pet.), the City had an easement for drainage sewers on property purchased by Herbert and Margaret Bell. "In the mid 1990's, the City began the 'Carissa Project' to improve the storm drainage system." *Id*. at 822. During the project, the pipes on the Bells' property were exposed, and the City discovered one of the pipes had displaced joints and was surrounded by cavities. *Id*. The City decided to seal the ends of the pipe and fill it with a concrete-like substance. *Id*. The Bells argued the concrete did not fill the cavities around the pipe or even fill the entire length of the pipe on their property, and subsequently sued the City. *Id*. The City filed a plea to the jurisdiction asserting governmental immunity which the trial court granted. *Id*.

With regard to the Bells' takings claim, the Dallas court noted the Bells' petition did not contain any factual allegations to establish the City intentionally performed an affirmative act. *Id*. at 825. Instead, the Dallas court asserted, "it is apparent that the property damage was alleged to be caused by negligent omissions; specifically, the City's failure to maintain and repair damage caused by faulty pipes. Consequently, the pleadings affirmatively negate a valid . . . takings claim." *Id*.

Finally, in *Harris Cty. Flood Control Dist.*, four hundred homeowners sued Harris County and the Harris County Flood Control District (collectively the "County") asserting a takings claim. 499 S.W.3d at 795. The homeowners alleged the flooding of their homes was caused by the County's approval of upstream development and the failure to fully implement a flood-control plan known as the Pate Plan which the County approved and authorized the District to implement over fifteen years before the lawsuit was filed. *Id.* at 796-97. With regard to the County's failure to implement the Pate Plan, the Texas Supreme Court asserted, "the law does not recognize takings liability for a failure to complete the Pate Plan, despite the homeowners' attempt to somehow bundle that inaction with the affirmative conduct of approving development." *Id.* at 800. The court further stated, "Because inaction cannot give rise to a taking, we cannot consider any alleged failure to take further steps to control flooding, such as the failure to complete the Pate Plan." *Id.* at 805. Although the court recognized the tension between the compensation obligation of the Takings Clause and sovereign immunity, the court reasoned:

> While compensation to those whose property is taken for public use is an important and constitutionally imposed obligation of democratic government, governments must also be allowed to survive financially and carry out their public functions. They cannot be expected to insure against every misfortune occurring within their geographical boundaries, on the theory that they could have done more. No government could afford such obligations.

*Id.* at 804.

Because Meuth's takings claim is based on the City's failure to take action with regard to the storm water culvert drainage pipe, the trial court properly granted the City's plea to the jurisdiction with regard to this claim.[4]

---

[4] In her brief, Meuth cites *Davis v. City of Palestine*, 988 S.W.2d 854 (Tex. App.—Tyler 1999, no pet.). In that case, the Davises alleged the city installed culverts in an arm of its storm drainage system in 1970. *Id.* at 856. That same year, a building was built on top of the drainage system. *Id.* The Davises purchased the building and asserted that in 1991, the defective condition of the culverts caused the building's foundation to crack and crumble, rendering the building unfit for the operation of their business. *Id.* "They argued that the City was negligent in failing to inspect

## DECLARATORY JUDGMENT CLAIM

Meuth next asserts the trial court erred in granting the City's plea to the jurisdiction on her declaratory judgment claim. The City responds Meuth's declaratory judgment claim is an impermissible disguised claim for monetary damages.

In her petition, Meuth alleged the following under the paragraph entitled "Declaratory Judgment":[5]

> Pursuant to C.P.R.C. § 37.001, *et seq*., Declaratory Judgments, Plaintiff seeks a declaratory judgment as to the encroachment of the City of Seguin maintained drain curb, inlet, and culvert and; further, that the City's drainage is not in its proper easement and that the City of Seguin is responsible and liable for the drainage off its public streets. Further, the City of Seguin is adjudged to have a taking without compensation both under TEX. CONST. ART. 1 § 17 and TEX. GOV'T CODE, Chapter 2007. Further, that the jury and Court find and decree that the City of Seguin be liable to Plaintiff for the cost of the removal of the subject drainage culvert and the cost of the restoration of the property and any consequential and necessary and/or reasonable reconstruction of improvements situated on the property.

"'[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim.'" *City of Hous. v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007) (quoting *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 856 (Tex. 2002)). If the declaratory judgment claim "attempts to subject the [governmental entity] to liability, the sovereign immunity doctrine

---

the storm drainage system, in failing to repair the dangerous condition in the storm drainage system, and in failing to maintain the support to their premises." *Id*. The trial court granted summary judgment in favor of the city on the Davises' takings claim. *Id*. The Tyler court reversed, noting although the Davises' pleading was "inartful" in alleging the actions were negligent, rather than intentional, the pleading defect could have been cured in response to a special exception. *Id*. at 859. The Tyler court also held the city did not conclusively prove the absence of intent. *Id*.

The *Davis* case is distinguishable from the instant case because the city in *Davis* installed the culverts which the Davises alleged were "defective" not simply unmaintained. In addition, we question whether the alleged failures to act in *Davis* would be considered intentional acts after the Texas Supreme Court's statement in *Harris Cty. Flood Control Dist.* that "inaction cannot give rise to a taking." 499 S.W.3d at 805.

[5] Meuth also makes reference to her supplemental petition; however, the supplemental petition only requests the trial court to take judicial notice of the City's ordinances. The supplemental petition does not request any further declaratory relief.

is implicated." *City of Dall. v. Blanton*, 200 S.W.3d 266, 280 (Tex. App.—Dallas 2006, no pet.) (citing *IT-Davy*, 74 S.W.3d at 856); *see also City of San Benito v. Ebarb*, 88 S.W.3d 711, 721 (Tex. App.—Corpus Christi 2002, pet. denied) (noting "a suit which is brought ostensibly for the purpose of declaring rights, but actually seeks to impose liability on the State for damages, is a suit against the State barred by sovereign immunity"). A dichotomy exists, however, between declaratory judgment claims regarding past violations where the only plausible remedy is money damages and those seeking to compel the city to follow the law in the future which do not implicate immunity to the extent an award of money damages is not sought. *See City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 633 (Tex. App.—Austin 2007, pet. denied); *Bell v. City of Grand Prairie*, 221 S.W.3d 317, 325 (Tex. App.—Dallas 2007, no pet.).

In this case, we construe Meuth's reference to the City's "liability" for the drainage from its streets and her request to hold the City "liable" for the costs associated with removing the drainage culvert and restoring the property as requesting monetary damages. *See Blanton*, 200 S.W.3d at 280 (holding declaratory judgment claim seeking to require City to pay the expense of transferring appellees' plumbing and reconnecting it to new sewer main barred by sovereign immunity). Accordingly, the trial court did not err in granting the City's plea as to Meuth's declaratory judgment claim.

### REMAINING CLAIMS

With regard to all of her remaining claims, including intentional and negligent misrepresentation, gross negligence, and fraud in a real estate transaction, Meuth contends the trial court erred in granting the City's plea to the jurisdiction because the City was engaged in a proprietary function for which its immunity was waived. Specifically, Meuth focuses on the alleged promises the City made in reassuring her the City would repair the storm water drainage culvert which she relied on in purchasing the Property. The City counters that it is immune from

intentional tort claims and its actions with regard to sanitary and storm sewers are governmental functions for which immunity is not waived.

### A. Intentional Misrepresentation and Fraud in a Real Estate Transaction

Meuth does not separately address the City's immunity from intentional tort claims. Under section 101.057(2) of the Texas Tort Claims Act, the City is immune from any intentional tort claim. TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West 2011).

### B. Governmental Function

The Texas Supreme Court has explained the proprietary-governmental dichotomy as follows:

> The proprietary-governmental dichotomy has been used to determine a municipality's immunity from suit for tortious conduct. The distinction has not been a clear one, but generally speaking, a municipality's proprietary functions are those conducted "in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government," while its governmental functions are "in the performance of purely governmental matters solely for the public benefit." A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions.

*Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) (quoting *Dilley v. City of Hous.*, 148 Tex. 191, 222 S.W.2d 992, 993 (1949)). The Texas Legislature defined governmental functions to include "sanitary and storm sewers." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(9) (West Supp. 2016).

Although Meuth acknowledges the Texas Legislature's inclusion of "storm sewers" in its definition of governmental functions, Meuth contends the City's promises and representations regarding the storm water drainage culvert are proprietary. A similar contention was made in *Bell v. City of Dall.* In that case, the Bells asserted "that even if the maintenance and operation of the storm drains in this case were governmental functions, the City's alleged promise to fill the cavities around those drains was not." 146 S.W.3d at 823. The Dallas court disagreed reasoning:

> Any damage to the Bells's property was caused by the City's failure to maintain the storm drainage pipes on the Bells's property. Specifically, according to the Bells themselves, the cavities around the pipes were allegedly created because of leaks in the pipes and too much water running through the pipes. The Bells cannot avoid the effect of governmental immunity by creative pleading.

*Id*. at 824. Similarly, any damage to Meuth's property was caused by the City's refusal to repair the storm water drainage culvert which is a governmental function. *See id*.; *see also City of Dall. v. Jones*, 331 S.W.3d 781, 786 (Tex. App.—Dallas 2010, pet. dism'd) (holding City's failure to relocate storm drainage pipe is discretionary decision that is governmental in nature). Meuth "cannot avoid the effect of governmental immunity by creative pleading." *Bell*, 146 S.W.3d at 824.

### C.     Estoppel

In the alternative, Meuth argues if the City's actions are governmental functions, the City should be estopped from asserting immunity based on the promises and representations it made to Meuth before she purchased the property.

"The general rule has been in this state that when a unit of government is exercising its governmental powers, it is not subject to estoppel." *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970). "There is authority for the proposition that a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." *Id*. at 836. This exception, however, "is applied with caution and only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Id*.

In *Prasifka*, a tract of property was initially classified as residential but was changed to heavy manufacturing based on a resolution passed by the city council. *Id*. at 834. The appellee purchased the property in reliance on a city zoning map which classified the property as heavy manufacturing. *Id*. After the property was purchased, the zoning map was revised to classify the

property as residential because the city attorney opined the proper zoning procedures had not been followed to change the classification. *Id.* The appellee asserted the city should be estopped from denying the validity of the resolution changing the property's classification. *Id.* at 833. The trial court concluded the city was not estopped, and the Texas Supreme Court affirmed, asserting it found no exceptional case warranting an exception from the general rule. *Id.* at 836.

In *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006), the Texas Supreme Court explained the general rule "derives from our structure of government, in which the interest of the individual must at times yield to the public interest and in which the responsibility for public policy must rest on decisions officially authorized by the government's representatives, rather than on mistakes committed by its agents." The court noted, "the interests of an individual seeking to estop a governmental entity must at times yield to the general public's interest in a government that is not encumbered by the threat of unlimited liability" and barring estoppel "protects the public fisc." *Id.* at 774 (citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 433 (1990) ("[O]pen[ing] the door to estoppel claims would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens, imposing an unpredictable drain on the public fisc.")). The court stated the case presented "an occasion to clarify the exception and reiterate its limited applicability." *Id.*

In clarifying the exception, the court first noted it had only applied the exception in two cases in which it held a city was estopped from enforcing a notice of claim provision.[6] *Id.* at 774-

---

[6] In *Roberts v. Haltom City*, Roberts sued the city for injuries she sustained as a result of a fall on a street maintained by the city. 543 S.W.2d 75, 76 (Tex. 1976). The city asserted Roberts's claim was barred because she failed to give city officials written notice of her claim within thirty days of the occurrence as required by the city charter. *Id.* The Texas Supreme Court held a fact issue was raised regarding whether city officials led Roberts to believe the notice of claim requirement was waived which would estop the city from asserting the notice requirement as a bar to her suit. *Id.* at 78. As a result, summary judgment was improperly granted in favor of the city. Similarly, in *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex. 1986), the Schautteets sued the city alleging the city negligently destroyed their house by fire. The insurance company paid the policy limit for the loss, signed a subrogation agreement with the Schautteets, and intervened in the lawsuit. *Id.* The insurance company's attorney met with the city attorney who

The court asserted those decisions "illustrate the types of cases that may fall under the 'justice requires' exception" because evidence was presented "that city officials may have affirmatively misled the parties seeking to estop the city and that the misleading statements resulted in the permanent loss of their claims against the cities." *Id.* at 775. "Evidence that city officials acted deliberately to induce a party to act in a way that benefitted the city but prejudiced the party weighs in favor of applying the exception articulated in *Prasifka*." *Id.* With regard to its application of estoppel in the two decisions, the court noted the complaining parties in those cases "would have been completely denied relief had the cities not been estopped, because only an equitable remedy could revive their otherwise extinguished claims." *Id.*

In *Super Wash, Inc.*, a car wash business sought to estop a city from enforcing an ordinance requiring it to maintain a continuous fence on the side of its property on Longfield Drive. *Id.* at 771. The ordinance was adopted in connection with the rezoning of the property from residential to commercial use based on area residents' concerns regarding vehicular traffic in their neighborhood. *Id.* When the car wash purchased the property, it was unaware of the ordinance and submitted a site plan for a curb cut and exit onto Longfield Drive. *Id.* The city approved the permit but, within a week, informed the car wash it was required to construct a fence along Longfield Drive after residents complained. *Id.* After construction was forty-five percent complete, the city informed the car wash it had to remove the planned exit onto Longfield Drive. *Id.*

---

informed him the city would investigate the incident. *Id.* The city's charter contained a ninety-day notice of claim provision. *Id.* More than ninety days after the fire, a city representative called the insurance company's attorney and denied any liability. *Id.* The Texas Supreme Court held a fact issue was raised regarding whether the city led the claimant to believe no further steps needed to be taken until the city completed its investigation; therefore, summary judgment was improper because the city might be estopped from relying on the notice of claim provision. *Id.* at 105.

After clarifying the exception to the general rule against estoppel, the Texas Supreme Court held the case did not present an exceptional case for the application of the exception. *Id*. at 775. First, unlike its two prior decisions in which the parties would have been completely denied relief absent estoppel, the court noted the business had been operating for years and the record did not indicate a second entrance/exit was necessary for its continued operation. *Id*. In addition, the court noted the car wash had other remedies by seeking a variance or a repeal of the ordinance. *Id.* Furthermore, the court noted the ordinance was a matter of public record, and the city notified the car wash of the ordinance within days of erroneously issuing the permit. *Id*. Finally, the court held any benefit to the city from adding a commercial business to its tax base was too attenuated to establish grounds for equitable relief, noting there was "no evidence that the city received any direct benefit from [the car wash] in exchange for the erroneously issued permit." *Id*.

Even if justice requires the application of estoppel, estoppel cannot be applied if it would interfere with the exercise of governmental functions. *Super Wash, Inc.*, 198 S.W.3d at 776; *Prasifka*, 450 S.W.2d at 836. The court noted "precluding a city from performing a specific governmental function in a single instance is not *per se* interference with its governmental functions." *Super Wash, Inc.*, 198 S.W.3d at 776. "Rather, in determining whether a case presents an appropriate instance in which to apply the exception, the relevant inquiry is whether estopping the city in a single instance will bar the future performance of that governmental function or impede the city's ability to perform its other governmental functions." *Id*. Specifically, "[a] court should consider whether estoppel will affect public safety, bar future enforcement of [an] ordinance, or otherwise impede the city's ability to serve the general public." *Id*. at 777.

We hold the facts of this case do not present an exceptional case for estopping the City. In this case, the property owners chose to build a house over a storm water drainage culvert, which Meuth does not allege the City constructed. With regard to Meuth's reliance on the City's alleged

promises, in *Prasifka*, the Texas Supreme Court held the city was not estopped from asserting its immunity even though the plaintiff purchased property in reliance on the representations made by the city's zoning map. 450 S.W.2d at 836. Moreover, the City did not receive any benefit from its promises, and subsequent investigation showed the cost to repair the culvert would be too great implicating the "public fisc." *Super Wash, Inc.*, 198 S.W.3d at 774. Finally, unlike the only two decisions in which the Texas Supreme Court has applied estoppel, the City's alleged misrepresentations did not "extinguish[]" Meuth's right to pursue a claim. *Id.* at 775.

## CONCLUSION

The trial court's order is affirmed.

Sandee Bryan Marion, Chief Justice